HARRY E. GORDON v. THE GRAND RAPIDS & INDIANA
RAILROAD COMPANY.

*Negligence—Fires—Injury to timber—Damages—Evidence.*

1. In a suit brought by the owner of standing timber which had
   been injured by fires negligently set, as alleged, by the defend-
   ant railroad company, the measure of damages as to the
   timber actually destroyed is its value (or "stumpage," as it is
   commonly called), and, as to the remaining timber, the
   increased cost of cutting the same, that appearing to be the
   only real damage sustained.[1]

2. The fire occurred during the latter part of September, and
   burned into the swampy land upon which the trees stood,
   loosening their roots and causing some of them to fall. And
   it is held that the owner, who sues two years thereafter, is
   not limited as to the increased cost of cutting to the fall and
   winter after the fire, but has the right to recover for such
   increased cost at any time before suit brought.

3. Plaintiff testified that he saw the section foreman of the defend-
   ant railroad company setting fires; that after he had set two
   fires, and while starting another, the plaintiff told him that
   he did not wish him to set fires; that it was dry, and that he
   had wood and logs there. And it is held that the evidence
   was at least competent as showing negligence in not prevent-
   ing the spread of the fires.

Error to Muskegon. (Dickerman, J.) Argued June
27, 1894. Decided December 28, 1894.

Case. Defendant brings error. Reversed. The facts
are stated in the opinion.

*T. J. O'Brien* and *J. H. Campbell,* for appellant.

*Chamberlain & Cross,* for plaintiff.

---

[1] See *Bailey v. Railway Co.,* 19 L. R. A. 653, and note, for
cases involving the measure of damages in actions for injury to
or destruction of timber.

Long, J.   Plaintiff sues to recover damages for loss sustained by injury to standing timber, and the burning of logs, wood, and posts, upon 160 acres of land adjoining defendant's railway, in Muskegon county, by a fire which occurred in the latter part of September, 1891.   The suit was brought in April, 1893, and a trial in October following resulted in a verdict and judgment for plaintiff of $1,600.   Defendant brings error.

The defendant relies upon the following claimed errors:

1. In regard to the elements and measure of damages.
2. In the admission of testimony as to statements alleged to have been made by the section foreman after the fire.
3. In improper and prejudicial statements of plaintiff's counsel on the trial.
4. In allowing testimony as to statements made by Gordon to the section foreman.

Six months after the fire plaintiff, through his attorneys, presented a written statement of his claim for loss, as follows:

| | |
|---|---:|
| 60 cords of wood, at $1.00 | $60 00 |
| 25,000 feet of logs | 100 00 |
| Damages to 80 acres of standing timber | 400 00 |
| | $560 00 |

On the trial, in October, 1893, two years after the fire, plaintiff claimed for:

| | |
|---|---:|
| 100 cords of wood, being 50 cords at $1.00, and 50 cords at 70 cents | $85 00 |
| 50,000 feet of logs | 220 00 |
| 200 tamarack posts | 4 00 |
| | $309 00 |

It is insisted that the balance of the claim upon which verdict was found was for the total loss of 120 acres of standing timber, equal to 5,000 cords of wood, and for which plaintiff was allowed $1,291, making, with the other claim, the amount of the verdict.   It is insisted that no such result could have been reached if the legal measure

of damages had been applied, and that in measuring the damages the condition of the timber at the time of the trial should not have been taken into account, but its condition during the fall and winter after the fire; that loss of profits could not be considered; that the legal measure of damages is the increased cost, if any, of cutting the timber, made necessary by the action of the fire, in that fall and winter. It is claimed that these rules were disregarded, and that plaintiff was allowed to go to the jury on an estimate of damages stated in a lump sum, based upon the condition of the timber at the time of the trial, which was two years after the timber burned, and for a total loss of all the timber, including loss of profits and increased value of wood a year after the fire.

The plaintiff was permitted to show the condition of the timber at the time of the trial, and that it was comparatively worthless, so that in estimating the damages the jury had the testimony before them upon which to base a verdict as for a total destruction, when, in fact, it appeared that the timber was not totally destroyed, but that the fire rendered it more difficult to cut it. It appeared from the plaintiff's own testimony that before the fire 40 acres of the land had been cleared, and nothing of any amount remained on that 40. What remained upon the other portion of the land was only about 100,000 feet of soft maple, and the rest was fit only for wood, and this would cut from 40 to 50 cords to the acre. No great amount of timber was burned. Plaintiff testified that he had cut off considerable of the timber after the fire for wood, but he had to pay higher wages for cutting; that during the winter before the trial some considerable part of the timber was blown down. He also testified that he paid from 20 to 30 cents more per cord for cutting than he did before the fire. So that it is clear that but a small portion of the timber was burned, and the only real damage

which plaintiff sustained, so far as the wood is concerned, was the increased price of cutting. But he was permitted to show, not only the total loss, but also the profits which he would have made if the wood had all been cut and sold. The utmost the plaintiff could have recovered, even if it had all burned, would be the value of the standing timber, or "stumpage," as it is commonly called. *Skeels v. Starrett*, 57 Mich. 350; *Michigan Land & Iron Co. v. Deer Lake Co.*, 60 Id. 143; *Ayres v. Hubbard*, 71 Id. 594; *Miller v. Wellman*, 75 Id. 353. As to the timber actually destroyed, the value of the stumpage would be the measure of damages; but that would not be the measure in the present case as to timber not destroyed. Those damages should have been limited to the increased cost of cutting.

Defendant insists that this increased cost of cutting should be limited to the fall and winter after the fire, and not the increased cost after that, as the timber, by being left standing for two years, had been blown down, which made it more expensive to cut. We think not. The plaintiff had a right to recover for such increased cost of cutting at any time before suit brought. The fire burned into the swampy land, loosening the roots of the trees. This was the cause of their falling. They fell by reason of the negligence of the defendant in setting the fire, if the fire was so caused, and plaintiff could not be compelled to cut the wood all off the first winter.

The next claim is that defendant was prejudiced by the admission of evidence, against defendant's objection, given by plaintiff's witness Buys, in which he was allowed to state that the same evening, and after the fire had been started by Decker, the section foreman, and at a place remote from the scene of the fire, witness asked Decker if there was not danger in setting fires, and Decker said he "didn't care a damn." This was error, but, as the testimony was stricken out, it need not now be considered.

Complaint is made upon the admission of the testimony of the plaintiff, Gordon, that after Decker, the section foreman, had set two fires, and while starting another, plaintiff told him he did not want him setting fires; that it was dry, and that he had wood and logs there. This was admissible. It was a conversation taking place at the very moment when the fires were being set which caused the damage. It was, at least, competent as showing negligence in not preventing the spread of the fires.

Some claim is made that defendant was prejudiced by the remarks of counsel. We think there was nothing in the statement of counsel which can be said to have prejudiced the defendant's rights, but such practices are not to be commended.

Judgment reversed, and new trial granted.

The other Justices concurred.